Good morning. May it please the Court, I'm Neil Steiner from Deckert, representing the Plaintiffs and Appellants, the National Council of La Raza, and the Las Vegas and Reno branches of the NAACP. I'd like to try and reserve three minutes. I'll keep my eye on the clock. Okay. It counts down. Great. We're here this morning, Your Honor, because the District Court ruled on a withdrawn motion to dismiss by the defendants on whether there was sufficient pre-suit notice, and then compounded that error by sua sponte holding that none of the plaintiffs had standing, and he issued that sua sponte holding without either giving notice to the plaintiffs that the Court was considering that, issuing an order to show cause, giving an opportunity to respond, holding argument, or giving opportunity to replete. The District Court concluded that he disbelieved the allegations in the complaint with respect to standing, and therefore dismissed the case with prejudice. And we believe that procedural error alone requires a reversal and remand, but the allegations of the complaint here make absolutely clear that all three organizations have organizational standing as well. The Court, we believe, doesn't need to reach the issue, but with respect to associational standing, the two NAACP plaintiffs have alleged associational standing. As the Court's aware, you only need one or the other, and here it's clear that there's organizational standing. The test for organizational standing is whether there's an injury in fact, whether there's a causal link, and whether it's redressable. Judge Fletcher, I believe in the Ninth Circuit, your opinion in the American Federation of Government Employees case says essentially that's the same test as the injury, the test for standing. If it was an individual plaintiff, is there an injury? One well-recognized way, I think, beyond dispute across both the Supreme Court, courts of appeals, is if you allege a diversion of your resources. Here, all three plaintiffs are very active in the civil rights movement. They focus on increasing political participation by historically disadvantaged groups, low incomes, minorities, and they do that through both voter registration efforts, voter education efforts, get-out-the-vote efforts, and not having people registered as a result of the defendant's violations of the National Voter Registration Act harm each of these organizations' interests. And they've alleged that to counteract that, they've conducted voter registration drives that they would not otherwise have conducted. They targeted low-income citizens who should have been given the opportunity at the voter registration office and weren't. And those are factual allegations. We're not at the summary judgment stage. We're not at the trial stage. The defendants didn't have the opportunity to do that. They didn't even challenge those allegations. These were all sua sponte rulings by the district court that, notwithstanding those factual allegations, he believed that they would have conducted the same drives anyway and therefore dismissed. And we think that was clearly the standardist de novo review, but I think there's no question that that was an erroneous ruling. With respect to the notice issue, the NVRA has a three-tier notice prong, depending on the length of time prior to an upcoming election. The violations occur. The State of Nevada moved to the State of Nevada. Counsel, could you slow down on this point, because this is an important point for me? Certainly, Your Honor. Which notice – which part of that tiered notice provision do you fall into? So, first, there's three answers, Your Honor, because I think we satisfy any of them. All right. Okay. So the first answer, and I think the most direct, is the district court shouldn't have reached this issue at all, shouldn't have considered the issue, because having withdrawn their motion to dismiss on insufficient notice, the defendants waive that issue. I think there's a point. Was that clear to the judge? Is the record clear that the procedural circumstances here are complicated by a number of rulings that were made by the judge and a number of filings that were made on a variety of different issues, Pro Hoc Vitae, et cetera. Was that – in your view, was that clear to the judge that it had been withdrawn before he ruled? In our view, it was clear to the judge. We had – and I'll tell you why. On August 29th … It is in the record. There were – and what's in the record is on August 29th, there were two stipulations submitted to the district court. There was a stipulation withdrawing the plaintiff's motion for a preliminary injunction, because essentially it was moot, there couldn't be effective relief in advance of the 2012 election, and so we agreed to litigate the case on the merits and not on an expedited P.I. proceeding. And in exchange for that, the defendants stipulated to withdraw their motion to dismiss. And both of those stipulations were submitted the same day. Counsel, you keep using submitted. Were they filed in the court record? Correct. They were filed and they're part of the record on appeal.  Correct, Your Honor. Thank you. And shortly thereafter, the district judge canceled oral argument on the P.I. motion and on the motion to dismiss. And so our view is he was certainly aware – we reasonably believed that he was aware when he canceled argument that those motions had been withdrawn. And then the case was referred to a magistrate to work out discovery and a case management schedule, which never, in fact, took effect because the district judge couldn't go into the State of Nevada to conduct discovery. But all of those things, we think, show that the court was aware that this motion had been withdrawn. Getting back to notice, the district judge was concerned that there had been some, I'll say, groundwork done at the end of the year to indicate that there might be violations of this act, and that the filing didn't – or notice wasn't given until early May. That's correct, Your Honor. I mean, that is the factual timeline. And obviously, if we could have completed the investigation and been prepared sooner, the goal was to have registration being done as early as possible. But that is the timeline. It's a December investigation. It's a May notice. Go ahead. Okay. So that's withdrawn. I think the second answer to your question about timeliness of notice is, at the time it's withdrawn, which is August 29th of 2012, we've now passed the 90 days from that May 10th notice. And so at that time, it's a very simple reason why it's withdrawn in the overall case scheduling, right? At that point, we could have easily amended the complaint if anyone was concerned about notice because now 90 days had passed. And so even if we had to give 90 days notice at the time that this was withdrawn as opposed to a stipulated withdrawal, there could have been a one-sentence amendment to the complaint that said, as opposed to the zero notice or 20 days notice, 90 days have now passed. We're here to litigate the case on the merits. The State of Nevada, to their credit, didn't put us through that. They stipulated to withdraw their notice. And so I think that's the second answer. Is that clear on the record, though? I mean, don't we have to parse through everything that happened almost within a short period of time? So there was, as I understand it, there was, in the December letter, there was a notice that was ongoing violations. But the complaint didn't allege that, did it? It did, Your Honor. And it alleged that there were ongoing violations, and it alleged very specifically, I think it's paragraph 47 of the complaint, that as of the filing of the complaint. And that was clear from the allegations in the complaint in terms of what they were. So under Iqbal, that the judge could have looked at that and should have, as a matter of law, seen that? That's correct, Your Honor. That in paragraph 47, I think we clearly allege none of the violations have been remedied. This is within 30 days of the election. So to come back, Judge Kristin, to your question, the third part of our answer on notice is we believe that this easily satisfies at least certain of the violations that we're looking at. We believe that it would satisfy the – it's a violation within 30 days, and therefore no notice is required. I'm not sure you have answered my question, because I'm not sure I've had a chance to get a word in edgewise. But what I'm trying to ask, counsel, is, in fairness, one of the things the district court was worried about is that you've alleged an ongoing violation, let's say, and one of the things he was, I think, pretty clearly concerned about is that the statute requires notice so that if the State's got a problem, the State can fix it before an election can be held, so we have a fairest possible election. So what is your response to that? Because I think these violations were noticed at the end of the year, and notice didn't go out in the – to mix my verbs – until May 10th. So under the statute, Your Honor, there are some circumstances where no notice is required. Yes. And we believe that when this complaint was filed on June 11th, we were in that 30-day period prior to the June primary election where you can file suit under the plain language of the NVRA. You can file suit without giving any notice. Right. And so, counsel, that's the point. The district court was concerned that reading the statute that way might be an end run around providing any notice at all, no matter how long you've known about it, which really defeats the purpose, which is to get any errors fixed, right? Well, I think, you know, to – to perhaps from the NAACP and LaRossa's perspective to rely on Judge – on Justice Scalia, you know, the way you determine what the – what Congress intended is to look at the language of the statute. And the language of the statute here clearly says if there's a violation within 30 days of the election, you don't have to give notice. And that's what Congress said. And so while there are circumstances, Congress very clearly said there are circumstances where no notice is required, and we believe even if you don't – even if it wasn't waived, even if it couldn't have properly been amended, the allegations here are that there were some violations ongoing within that 30-day period. In that circumstance, the statute is clear. You don't have to give notice. You can file your suit. And what we've alleged – I'm afraid I haven't – I'm afraid I haven't said this and I haven't fully answered your question again. I can explain, or I can – I just want to know if you want an opportunity to respond to the question I do have. Please. Reading it that way, and I appreciate – I mean, I've read your briefing carefully. And reading it that way, any ongoing violation, you could run it right up to shortly before an election and then be within that window and then say no notice is necessary. That's your position. I'm asking you to look at the other side of the coin, sir, which is, reading the statute that way, doesn't it do an end run around the – what seems the district court thought was a built-in provision to try to require that there's notice so that the State can respond? Well, if that was the case, then there wouldn't be a period of time – if that was Congress's intent, there wouldn't be a period of time where no notice was required. And there can be other statutes where there's no period where there's, you know, no notice required. You have to do it under any circumstance. That's not the NVRA. And so I don't know that you can read anything more into it than what the words are, but the three-tiered requirements are, I think, very clear. And if there's any violation within that 30 days prior to the election, no notice is required. With respect to what those violations are, I think we've alleged that they were ongoing. We've alleged that they hadn't been corrected. The State – there's a good-faith basis for doing that. For example, with respect to two offices that don't have any voter registration forms available, whether you ask for them or not, it's not like it was on a single day. We were told by the officials in those offices that it had been years since they had forms. We sent the notice letter to the State. The State responded by asking for more time. They didn't say – Sent the notice letter 5 months later, though, right? But this had been going on for years. And when the State – But that was just a yes or no, counsel. Yes. That was a real opportunity for a yes or no. Yes. We sent the notice. It was 5 months. And the State responded a few weeks thereafter and said, can we have more time until after the election? They didn't say the facts have changed, we've sent the notice forms, we've changed our policy that violates the statute. They didn't do any of that, and therefore, we believe we had a good-faith basis for our allegation that the violations were ongoing, and that was within 30 days and no notice was required. And the State certainly was prepared in August to litigate the case on the merits, and that's what we believe should happen there. The stipulation for dismissal of the motion to dismiss or withdrawing of the motion to dismiss, was it anything clear as to why? In other words, it was – it was – did the State concede that notice had been filed, timely notice had been filed on the basis of any of the tiers? No. It was a – both stipulations with respect to our withdrawal of the PI and the State's withdrawal of their motion to dismiss were the party – yeah, the parties agree, you know, motion was filed on such-and-such a date, response, the parties agree that it's – that it's withdrawn. Let me ask you this, and you've said it already, but I want to kind of go back over it. This is a follow-on, really, to the line of questioning that Judge Christin was asking. Where in the complaint are you alleging the ongoing violations that you contend allow you to do this without notice? Right. So the allegation using that there are ongoing violations, I think, appears in – in multiple paragraphs. I think 14, I can look at some of the others when I respond, but in 47, it says none of these violations have been remedied, and – and the very clear things that haven't been remedied are, one, the State's policy when people leave their voter preference form blank of not giving – of not giving forms. That's one that's very clear. We have a policy that was in effect. They haven't changed the – they hadn't changed the policy, and that's – So you have to read two paragraphs together. Is that the answer to Judge Fletcher's question? Correct. And we give examples in paragraph 46 of what violations were in December. Two of those are policy violations. No forms and not giving forms for blanks, and then we say in paragraph 47, these haven't been – these haven't been remedied. Now, your time is running, but in order to do this in an orderly fashion, you've made a fairly vigorous argument that we – if we reverse, we should – and remand, we should assign it to a different judge. That – we don't usually do that. We – we recognize your – We recognize that that is an extraordinary request, Your Honor, and I believe it's the first time in my career that I have ever made such a request, and it's not one that we make lightly. We believe, at a minimum, the appearance in this case, the appearance of justice, even if the Court doesn't get to whether there's – is or isn't any type of personal bias, makes remand. So the undisputed evidence that establishes a – an appearance of bias such that it seems to me that the Ninth Circuit case law provides clearly it has to be outrageous. So you'd have to make a determination based upon what the record shows, and that is the undisputed record. We're not talking about inferences from the record. So, Your Honors, we would say with respect to one very clear example, the Pro Hoc Vitae motions, having unopposed Pro Hoc Vitae motions, scheduling a hearing on unopposed Pro Hoc Vitae motions, and announcing at the outset of the hearing without argument that you're going to grant two Pro Hoc Vitae motions because this Court doesn't need a bunch of New York lawyers coming out to tell the State of Nevada. How many New York lawyers did he end up allowing? None, Your Honor, because none of the Pro Hoc Vitae motions were ever ruled upon. Oh, so he didn't rule on none of them? What happened following the hearing? But he said he was going to grant one for each, and he – there was the – right? And the lawyers requested an opportunity to caucus to decide which name to proffer, right? Right. He said that La Raza could have one and the two different NAACP branches could collectively have one. We asked the judge for reconsideration of that, and he didn't rule on it. So you never even got the order granting the two lawyers. I got it. Correct. And I knew there was a motion for reconsideration or further consideration, but I did not understand that you never even got a ruling allowing the two. You got an indication that he would allow two, but you never got a ruling to that effect. That's correct, Your Honor. Okay. So he's going to let two of you guys in, two of you fast-talking New York lawyers, and you talk fast enough for two or three lawyers, in my view. Actually, I apologize, Your Honor. We talk really slow out here. I was trying to avoid the 20 or 25-minute argument, but, you know, point taken. Thank you, counsel. Okay. So we've got pro hac via chair. What else do we have? And then we have the scheduling, and I understand scheduling for a district court. District courts are very busy, but scheduling an argument not until after the voter registration deadline, setting the P.I. for two days after the voter registration deadline, the State agreeing that it should be moved up, and so he moved it up to a day that was a religious holiday. When the State agreed that it should be moved up even earlier in September, he responded by putting it back to after the registration deadline. And I understand that it's not part of the record in this particular case, but this was the same day, the pro hac via chair ruling was the same day that he was ---- It's not part of the record, right? If what you're about to say is not part of the record. I think it's in the briefs and it adds to the color, which was that this district judge ---- You're referring to the other case in Judge Reinhart's separate opinion. Correct, Your Honor. And that was the same day as the pro hac via chair. Okay. I think we have the drift. Let's hear from the State. Good morning.  Kevin Benson, Deputy Attorney General on behalf of the State of Nevada. I want to rewind and go back to the notice provisions in this case. And particularly here in this case, the violations occurred in December of 2011. You say that are those the only violations? Are you saying the violations are not ongoing? I'm not saying that they're not ongoing. I'm saying that that is when the plaintiffs indisputably discovered and knew of these violations and had conducted this. Wait. Yeah, but we look at the record again. That would be the complaint. In the complaint, they alleged ongoing violations. And the facts that counsel has just set forth what those facts are that would establish on the complaint, and of course, we take all of the complaint as accurate or as true, all inferences in favor of the complaint. Why isn't that enough to establish ongoing violations? It is not enough, Your Honor, because under the plain language, the structure, the policy, and the case law interpreting the NVRA, it requires for the notice provisions that in order to get into this 30-day exception to the general rule, they have to allege a particular discrete violation that actually occurred within 30 days of the election. Wait, wait, that's the problem I have with your argument. Where does it say it has to be a particular discrete violation? I concede it doesn't use the word discrete. Right. However, if you look at the plain language of the statute, it repeatedly uses the word particular. No, it does not, Your Honor. It uses the word the violation repeatedly. Using the definite article, it talks about when it occurred in the past tense. It talks about persons aggrieved in the past tense. It does, counsel, but in this particular case, they are clearly alleging systemic ongoing violations. That is true, Your Honor, but that still is not a reason to circumvent the rule about giving notice an opportunity to cure, because these are policies we're talking about. We're not talking about statutes. We're talking about policies that can be changed. Well, we do have a statute that we need to look to, and I appreciate, as you probably gleaned from my earlier questions, that there is a concern because the purpose is to get, if there's a problem, get it fixed. Absolutely. But what about his response, which is there's a plain language reading of this statute that says if it's ongoing, they don't have to give notice. What's wrong with that? I respectfully disagree with that reading, because I think the plain language of the statute is exactly the opposite, which is that you have this three-tiered approach to notice, which the general rule is notice and 90 days to cure. It gets a little shorter as you get closer to the election, and then you have an exception to the general rule, which is the 30 days. Congress wouldn't have bothered to put forward these three different levels of notice if you could circumvent the notice by simply alleging without any particular allegations, any particular facts about any violation that occurred within the 30 days. That would allow the exception to swallow the rule entirely. But he's got very particular allegations here in paragraph 46. And why isn't that enough, all reasonable inferences in favor of the plaintiff? Because on this case in particular, first of all, I don't believe or disagree that that would be sufficient in any case. But in this case, they affirmatively allege that their most recent violations or, excuse me, investigations occurred in December. So that negates any inference that they were actually aware of any particular violations that occurred within 30 days of the election. Well, you know, if they say they've got very specific allegations of earlier violations, and they say the violations are not remedied, and there's the sort of violation that do continue, like, for example, required documents simply aren't there, I think I've got a plausible allegation of continuing violation. And with – I think – let me divide this into two separate things, Your Honor. I think that this might help us. What we're saying is we're not alleging or we're not arguing that they can't ever state a claim for a violation to NVRA in general for an ongoing violation. What we're saying is that they have failed to comply with the notice requirements. And the notice requirements are different. I understand the argument, and I've got some sympathy with it, as does Judge Christian from her questions and perhaps Judge Silver. We don't consult on these things before going on the bench ordinarily, and we have not here. So I say I've got some sympathy for it, but as a practical matter, this is not coming out of the blue for you, that is to say the State of Nevada knows that you – there's some ongoing investigation, you've had communications with them, they've asked for a cure, you've not done it, or at least in their view, you've not done it. So it's not as though this lawsuit is the first you ever heard of the complaints that they've got. So it's not as though you're being ambushed. Respectfully, I disagree, Your Honor. There were some discussions early on. I'm not sure that any of the material from those early discussions is part of the record in this case. But as of December, as far as we knew, everything was fine. It wasn't until five months later, when we're 32 days before the June primary election, that they finally gave us notice that they considered not everything was fine. But you're sort of reading in a statute of limitations that if they have a notice of a systemic violation, or rather a concern about a systemic violation, that they have to speak now, that they have to give notice within a certain period of time, or else they lose the ability to come forward. No, Your Honor, I'm not saying that at all. What I'm saying about in this case is that once they discover the violations and those violations occurred more than 120 days before the election, they have to give notice and 90 days to cure. If it turns out that the 90 days pass and it's not cured, by all means, they can file their complaint.  It's not a statute of limitations. It's similar to the RCRA cases, which require. Well, okay, fair enough. Maybe my analogy wasn't a good one, but it still leads to the – I guess it's just not a very fruitful line of discussion, but his response is that by the time the Court got around to dismissing this complaint, 90 days, that was all water under the bridge at that point. Well, and that, I think, is a perfect demonstration of how this case circumvented the notice requirements, because when they filed their complaint in June right before the primary election, now there is all this preliminary injunction, motions for expedited discovery. The defendants were actively litigating this case instead of having 90 days to investigate and address any issues. And that's really what the statute is – the very purpose of these notice requirements. You know, if I were redrafting this statute based on the education I've received from sort of the narrative of this case, I think I would distinguish between different kinds of violations, frankly, instead of the kind of violation we have here, which is basically sort of an ongoing problem. But despite what some people say, Federal judges don't get to rewrite statutes. And with respect to that, Your Honor, the reason why the ongoing violation thing fails in this case is because with regard to – take, for example, the policies about not giving a voter registration form to somebody who doesn't check either box. That case was decided by the Tenth Circuit in February. After they had done and discovered these alleged violations in December, before they gave the notice. If they had given us notice and an opportunity to address that, very well that policy could have been changed and we could have avoided this litigation entirely. So that's a prime example of why simply alleging that there's a policy or an ongoing violation is not sufficient to circumvent the notice requirements. Roberts. Now, what's the relief being sought here? Is it just injunctive and declaratory relief? That is all that's permitted under the NVRA, yes, Your Honor. Right. So we're not talking about damages. They just want you to fix it. Correct. So what's the problem here? I mean, you know you've got a lawsuit. You know you've got allegations that you've got ongoing violations. I gather you're going to contend, if you ever get to the merits, that you're not – either you're not doing it or you have fixed it or you will fix it. I mean, I think we're fighting over something that in practical terms now is totally trivial. Isn't that right? In this particular case, what we're talking about here is we believe that we have fixed any issues out there. We feel that we are in compliance with the statute, and we feel that this litigation So get to the merits and defend on the merits. Be done with it. Well, with regard to defending on the merits, the issue that we have here is we never should have to defend on the merits in the first place, because this lawsuit never should have been filed in the first place, because they didn't give us the adequate 90 days, and they are only allowed to Well, their response is going to be that it shouldn't have had to be filed because it's really clear what you're supposed to do to provide an opportunity to register to vote. But, you know, we're sort of in the soup. They allege the allegations, and they discovered them because they think the State didn't comply with what Congress required them to do. That's the substance of their allegations, indeed, Your Honor, and the whole point of the notice provisions. And I'm not, like I said, I'm not arguing that they can't bring those allegations in a substantive claim. But here, they didn't comply with the notice provisions, and that is directed at fixing those problems. Yes, I agree, and I've expressed my frustration over that. It's just that it doesn't seem to me that anybody particularly has the high ground here about being able to say that this lawsuit could have been avoided if somebody had complied with the law. I think it absolutely could have been avoided, Your Honor, and I apologize, unless I'm missing, misunderstanding your question, I don't see why there's anything in the record that shows otherwise. Well, because they've alleged that the State didn't comply with what Congress required by, in terms of allowing people to, or giving the opportunity to register to vote. That's their view. And even if that were the case, if they had given us notice and fixed it within 90 days, then they would not have a cause of action under the AEDA. Well, they, unless they, their concern was that it was going to reoccur. Well, unless. That's why they asked for an injunction, and that's why they asked for a declaratory order by the Court and an injunction. Well, unless they could, I think the standard under the statute, Your Honor, the plain law, cannot sue until they have given notice, they've given the time to cure, and  But we have to go back to the complaint again, and we take the complaint with all reasonable inferences in favor. Why haven't they alleged enough? There are, there is this three-tier, but the three-tier doesn't, or the notice doesn't require, isn't required if they've alleged ongoing. And what's more, you, your client dismissed the motion to dismiss or withdrew it. Well, let me address the first one briefly, and then I'll go back to the waiver issue. With regard to the complaint, our argument is that as a matter of law, simply conclusory allegations that it's an ongoing violation is not sufficient under the plain language of the NVRA. This is not a heightened pleading standard. All it is is applying the language of the statute that requires a, that the violation occurred within 30 days in order to invoke that special exception. What would they have had to do? I think this part of your argument is also important, counsel. What would they have had to do in their complaint? I'm looking at, I don't know if you have it with you there, 46 and 47 are the paragraphs that opposing counsels invited us to look at. I do not have it right here in front of me, Your Honor, but I think what they would have had to do is they would have had to follow up and find an actual violation where somebody went into someplace and did not get a form that they were required to get within 30 days of the election. And then they could have sued on that violation. The problem that we have here is they can't circumvent the notice requirements for violations that they clearly knew of and that clearly occurred more than 120 days before the election by bootstrapping it onto a specific violation that occurred within 30 days. So your position is that this sort of groundwork, what I call this fieldwork, where they did to go to various offices in December, I think it was December, just before the start of the year, would have needed to be repeated within 30 days of the election? Right. And then they could have sued on those violations that occurred within 30 days of the election. What I say is what you're saying. It's not a particular or discrete violation. Correct. That's what you read it to be. An actual violation, yes, Your Honor. And the fact that they have alleged that they are ongoing is not enough? I mean, were to look at that as being, let's say, not adequate even under Rule 11? I mean, giving everybody – giving the plaintiffs and the attorneys, once again, a presumption in favor of their allegations? I don't mean to say that it wouldn't be adequate under Rule 11. What I'm saying is it's not adequate as a matter of law to comply with the notice requirements of the NVRA. In this case, the complaint clearly states that the most recent investigations occurred in December. The notice was given in May. They sued in June. 90 days had not passed. It was apparent from the face of the pleadings that they had failed to comply with the notice requirements. Okay. So then the second question I ask, it was withdrawn. Correct, Your Honor. There was a stipulation to withdraw the motions for the preliminary injunction motion and the motion to dismiss. Well, there was an answer and a motion to dismiss, which is confusing to me. I don't understand why that happened, but independent of that, it was withdrawn. Correct. It was withdrawn. However, interestingly, the district judge never signed either of those stipulations, and it's apparent from his order that he did not consider them withdrawn and that they were still in front of him. He did vacate the hearing. Well, he doesn't have to sign a stipulation, but in other words, there was an attached order and he never signed the order. Correct. And in any event, it doesn't matter in this case because the 90-day requirement under the NVRA is not an affirmative defense that can be waived by the defendant. It's a part of the – it's part and parcel of the elements of the plaintiff's claim. And so it's nothing that the defendant even could waive in this case. And secondly, the district court in any event was entitled to dismiss sua sponte in this case. First of all, the plaintiffs did have notice that we filed a motion to dismiss. They responded to it. They made all the arguments about why we were wrong, why a continuing violation ought to be sufficient, et cetera. So they had an opportunity to be heard on this. But again, because it was apparent from the face of the pleadings in this case that they had not complied with the 90-day requirement, the district court was correct in dismissing on that ground. And I see I'm almost out of time here, Your Honor. Roberts. Let me ask a question with respect to the actual ruling of the court, divorced from notice. The court says there's no Article III standing. I'm inclined to disagree with the court. I'm inclined to think that there's organizational standing here. Try to talk me out of that. Well, I think with regard to Article III standing, I think I am compelled to make a very small concession in this case. And I want to be clear about what the limitations of that are. And in this case, we agree that it was error for the district court to dismiss with prejudice for lack of Article III standing. We do not concede that they have Article III standing. We feel that they do not, and because briefly in this case, none of the allegations about their voter registration drives show that it was anything other than business as usual. They make some very conclusory allegations that they have diverted funds and all of this, but then the specific factual allegations they make in this case are that they have ordinarily conducted numerous voter registration drives for every year for several years past. There's nothing to indicate that it was as a result of or traceable to the defendant's alleged violations. So your position is, is that it needs to be remanded to develop the facts to establish that they have standing? Is that what you're saying? Is that on the record, on this record, your position would be that they would not be able to establish standing? Our position is that they have not, on the allegations of this complaint, established standing, but we concede that it was error to dismiss it with prejudice on that basis. And your argument, saying, is why, based on this complaint, there's no Article III standing, is that they're basically in the business of voter registration and that what you're doing is no more than compelling them to engage in the business in which they ordinarily engage. That's the argument? What I'm saying is that they were engaged in business as usual, and therefore they haven't alleged any actual concrete injury. Well, but business as usual, that kind of depends. If in fact, and of course I don't ask you to concede this, but if in fact Nevada is violating the Federal statute, they're obviously expending funds to force you to comply with the statute, and that means that their violation is requiring them to expend funds and engage in efforts that they ordinarily would not do, and that they would be using that money and using those efforts to do other things having to do with voter registration. So that sounds as though the violations that you're accused of, I mean, they may or may not be violations, I'm not there yet, but it sounds as though the alleged violations are causing them very specific diversion of resources that would be spent elsewhere. How is that wrong? I seem to disagree. I disagree, Your Honor, because what they've alleged to be with the fact that they're violating the law, or do you disagree on a different ground? I'm disagreeing that they have sufficiently alleged an actual injury here, because all of the facts that they have alleged do not show that this is, in fact, to combat or connected or traceable in any way to the defendant's violations. They seem to allege that this is just what they do as an ordinary course, whether the defendants are in compliance or not. Okay. I got the argument. So now could you respond briefly to the motion to assign or the argument that we should assign to a different judge on remand? Certainly, Your Honor. And as you noted, that is reserved for unusual and extraordinary cases. And the plaintiffs have to show either – excuse me, the appellants in this case. They have to show either that there was personal bias or that there are extreme unusual circumstances. And I don't think this case arises to either of those. There are a couple offhand remarks that, you know, in the perfect world we might not want to hear from a Federal judge, but I don't think any of them arise to the assignment. For example, I believe it was the Sears case where the district court made comments along the lines that this was the most egregious case that he had ever seen and that if he were the prosecutor's boss, he would have fired him on the spot for bringing this case. Things of that nature that really evince a feeling that the district court could not possibly put these feelings out of its mind after a reversal from this court. And simply referring to the numerous Pro Hoc Vitae applications in this case, I think the judge was inclined to grant two of them. He didn't simply because it became moot. Those kinds of things I don't believe quite arise to that standard. Roberts. Okay. Thank you. So with that, we respectfully request that this court affirm the district court in all respects except for the dismissal with prejudice and that it remand with instructions that the dismissal be entered without prejudice. Okay. Thank you. Now, I think let's put two minutes on the clock, and I think with the speed at which you talk, you probably won't even need them. I'll try to be slower, Your Honor. And I only have a couple of points to make. One, with respect to the notice argument, the State has said, well, it's an element of a claim, not an affirmative defense. And two points there, they've argued that this is statutory standing, and they actually plead in their answer lack of standing as an affirmative defense, so I don't quite reconcile that. But it doesn't matter under the cases. It's not whether it's an element of the claim or whether it's an affirmative defense. The test is whether or not it's jurisdictional. And here, one thing that we agree with Judge Jones on is it was not jurisdictional. He says that, I think it's page 15 of his order. And the State, in their summary of argument, says it's not jurisdictional. And if it's not jurisdictional, they should waive it. And that again answers, I think, the notice question. Judge Krishnan, I'd like to come back to one other point on the notice and the sliding scale. We talked about the 90 days and we talked about the no notice if it's within 30 days. What I didn't talk about was the 20-day notice period if you're within 120 days. And at the time the notice was given here, the State points out it's 32 days before the election, so we're within that 120-day period where 20-day notice is required. And so the notice letter that we gave, which was attached as an exhibit to the complaint and it's in the record at 69 to 72, points out the violations, including the policy violations, and the State had their 20 days, and we alleged in the complaint that those hadn't been remedied. And that, we submit, is yet another reason why the notice has been complied with. We come back to the fact that it's withdrawn. And, Judge Fletcher, if you had additional questions on Standy, I'm happy to answer them, but I think I've, unless Judge Silver or Judge Christen, if you have other questions, we respectfully request that this be reversed. Roberts. Okay. Thank you very much. Thank both sides for your arguments. Thank you. The case of National Council of LaRosa et al. v. Miller submitted for decision. And that concludes our argument this morning in this courtroom.
judges: Silver, Fletcher, Christen